UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | WAYNE O'BRIEN<br>GERALDINE O'BRIEN,<br><br>Debtor(s). | :  Chapter 13<br>:<br>:  Bky. No. 10-10716 ELF<br>:<br>:<br>: |

# OPINION

## I. INTRODUCTION

Presently before the court is the Debtors' Objection to the Proof of Claim filed by PRA Receivables Management, LLC ("PRA"). In its Proof of Claim, PRA asserts that it holds a claim of $13,024.46 as an assignee of a credit card account. The Debtors contest the allowance of the claim based upon the lack of documentation attached to the Proof of Claim. In particular, the Debtors assert that the claim should be disallowed because PRA did not attach documentary evidence to the proof of claim supporting: (a) the validity and amount of the debt or (b) its status as assignee of the account. (See Debtors' Objection ¶¶ 4-5) (Doc. # 21).

At the hearing held on the Objection, neither party presented any evidence.

This contested matter presents issues that arise regularly in contested matters involving objections to proofs of claim:

- **Was the proof of claim executed and filed in accordance with the rules of court, thereby imposing on the objecting party the initial burden of producing evidence to rebut the claim pursuant to Fed. R. Bankr. P. 3001(f)?**

- **If Rule 3001(f) does not apply, does the claimant have the initial burden of producing evidence in support of the claim or are there any circumstances in which the burden of producing evidence contesting the validity or amount of the claim shifts to the objector, notwithstanding the inapplicability of Rule 3001(f)?**

Reasonable minds can differ (and have differed) on these issues.

In this case, I conclude that:

(1) PRA's proof of claim is not entitled to <u>prima facie</u> evidentiary status under Rule 3001(f) because its proof of claim does not comply with Rule 3001(c);

(2) although in some circumstances, a proof of claim may have <u>prima facie</u> evidentiary effect, even though it does not satisfy the requirements of Rule 3001(c) and (f), in this case, PRA's proof of claim is not entitled to <u>prima facie</u> evidentiary effect; and,

(3) because PRA's proof of claim lacked <u>prima facie</u> status either through Rule 3001(f) or otherwise, and PRA presented no further evidence in support of the claim, the claim will be disallowed.

## II. BACKGROUND

Wayne and Geraldine O'Brien ("the Debtors") commenced this chapter 13 case on January 29, 2010. In their bankruptcy schedules, they listed a priority tax claim and a number of unsecured claims. (Doc. # 1, Schedules E and F). The creditor scheduled as holding the priority tax claim filed a claim in the amount of $9,118.82, asserting secured status rather than priority status. (<u>See</u> Claim No. 6). Unsecured claims totaling $38,212.64 also have been filed with the court.

In their chapter 13 plan, the Debtors propose to: (a) pay their scheduled priority tax claim in full (<u>i.e.</u>, the claim filed as a secured claim)[1] and (b) pay the allowed unsecured claims in full (100%) (due to the amount of non-exempt equity in their residence). <u>See</u> 11 U.S.C. §§1322(a)(2), 1325(a)(4).

PRA, as "agent of Portfolio Recovery Assocs. and successor in interest to

---

[1] The Debtors initially objected to Claim No. 6, but have withdrawn that objection. (Doc. #'s 30, 41). Presumably, the Debtors intend to amend their plan to provide for payment of this claim in full or to otherwise address the claim.

SQUARETWOFINANCIAL (Bank of America)," filed an unsecured claims, Claim No. 3, in the amount of $13,024.46, on March 16, 2010. PRA's proof of claim ("the Proof of Claim") was executed by Carole E. Hardy, VP for Bankruptcy. It identifies Geraldine O'Brien as the Debtor.[2]

On its face, the Proof of Claim states that the basis for the claim is a "credit card" account and provides a four-digit number. However, it does not state whether that four-digit number is the account number used by the original creditor or the number which PRA uses to identify the account. The Proof of Claim further states that the Debtor may have scheduled the account as "Bank of America."

The Proof of Claim includes a one page attachment, titled "Supplemental Account Summary," which repeats some of the information found on the face of the Proof of Claim. The attachment also states that the account

- was purchased from SQUARETWOFINANCIAL on February 25, 2010
- has a loan date of 8/19/2005
- has a charge off date of 4/30/2008
- has a last payment date of 9/5/2007.

At the July 20, 2010 confirmation hearing, the Debtors acknowledged that their current plan is not adequately funded and that they must file an amended plan to increase the plan's funding in order to pay all allowed unsecured claims in full. However, they requested that the court first rule on two pending objections to claims so that they may calculate the necessary plan funding level before filing their amended plan . The court granted that request and continued the

---

[2] For simplicity's sake, I will refer to Debtor Geraldine O'Brien and both Debtors interchangeably throughout this Opinion even though, strictly speaking, the claim was filed against Debtor Geraldine O'Brien only.

confirmation hearing.

One of the two claims objections pending on July 20, 2010 has since been sustained. The Debtor's other objection is to PRA Proof of Claim of $13,024.46. The hearing on the Debtors' Objection ("the Objection") to the Proof of Claim was held on July 20, 2010. The Debtors' counsel was present at the hearing, but neither the Debtors nor any PRA representative appeared. The Debtors filed a post-hearing Memorandum of Law in support of the Objection on August 17, 2010. (Doc. # 46). The matter is now ready for decision.

## III. DISCUSSION

### A. Burdens of Proof in Claims Objection Contested Matters – Generally

In analyzing objections to proofs of claim, bankruptcy courts must consider two primary sources: the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.

Section 502(a) of the Code provides that a proof of claim "is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. §502(a). In this Circuit, the Court of Appeals has held that a proof of claim

> that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward. The burden of going forward then shifts to the objector to produce evidence sufficient to negate the prima facie validity of the filed claim.

In re Allegheny Int'l, Inc., 954 F.2d 167, 173-74 (3d Cir. 1992). The principle expressed in Allegheny Int'l is rooted in past practice under the former Bankruptcy Act.[3]

---

[3]    As one court stated more than 100 years ago,

> It is settled . . . [that] the allegations of the proofs of claim are to be taken as true. If they set forth all the necessary facts to establish a claim, and are not self-contradictory, prima facie, they establish the claim, even in the presence of

Fed. R. Bankr. P. 3001(f) addresses the same subject as <u>Allegheny Int'l</u>, i.e., which party has the burden of going forward at a hearing on an objection to a proof of claim. Rule 3001(f) provides:

> A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim.

If a claimant complies with rules of court and its proof of claim achieves <u>prima facie</u> evidentiary status through Rule 3001(f), the burden of going forward with evidence contesting the validity or amount of the claim shifts to the objector.[4] Rule 3001(f), too, can be traced to the former Bankruptcy Act.[5]

---

> objections, and the objector is then called upon to produce evidence and show facts tending to defeat the claim of probative force equal to that of the allegations of the proofs of claim. The burden of proof is always on the claimant, but, as probative force is given to the allegations of proofs of claim, and no probative force is given to the objections, this must be met, overcome, or at least equalized, by the objecting party. In short, if the proofs of claim state facts sufficient to make a prima facie case . . . the referee is bound to allow the claim, unless evidence controverting such facts is given by the objecting party.

<u>In re Castle Braid Co.</u>, 145 F. 224, 228 (S.D.N.Y. 1906) (citing <u>Whitney v. Dresser</u>, 200 U.S. 532-535 (1906)); <u>see also</u> James W. Moore and Lawrence P. King, 3 <u>Collier on Bankruptcy</u> ¶57.18[5] (14th ed. 1974) ("Collier 14th").

[4]    See, e.g., <u>In re Lepley</u>, 2007 WL 2669128, at *2 (Bankr. W.D. Mo. Sept. 6, 2007); <u>In re The Weightman Group, Inc.</u>, 2005 WL 2589190, at *2 (Bankr. E.D. Pa. May 25, 2005); <u>In re Hodges</u>, 2003 WL 262521, at *2 (Bankr. M.D.N.C. February 04, 2003).

[5]    The grant of <u>prima facie</u> evidentiary status to certain proofs of claim originally was a creature of the statute, not the court rules. Section 57a of the former Act, 11 U.S.C. §93(a) (repealed), provided, in pertinent part:

> [a] proof of claim filed in accordance with the requirements of the Bankruptcy Act, the General Orders of the Supreme Court, and the official forms, even though not verified under oath, shall constitute prima facie evidence of the validity and amount of the claim.

Effective October 1, 1973, the Supreme Court adopted Bankruptcy Rule 301. Rule 301(b), titled Evidentiary Effect," provided that "[a] proof of claim executed and filed in accordance with

### B. The Debtors' Contentions

At the hearing on the Objection, the Debtors did not present any evidence in support of the Objection and PRA did not appear. With no evidence offered by either party at the hearing, the decision in this case depends on the allocation of the burden of proof.

The Debtors contend that the burden of proving the validity and amount of the Proof of Claim remains with PRA because the Proof of Claim does not conform with Fed. R. Bankr. P. 3001(c) and the instructions that are part of Official Form 10.[6] The Debtors argue that the Proof of Claim is nonconforming because it fails to include the documentation required by Rule 3001. According to the Debtors, it follows that the Proof of Claim lacks prima facie evidentiary status as to its validity, see Fed. R. Bankr. P.3001(f), and should be disallowed upon objection by a party in interest.

In short, the Debtors contend that once it is determined that a proof of claim is not entitled to prima facie status under Rule 3001(f), as a matter of law, the burden of production remains on the claimant and, if the claimant does not come forward with additional evidence to

---

these rules shall constitute prima facie evidence of the validity and amount of the claim," the same language now found in Rule 3001.

      Rule 301 superseded §57a of the Bankruptcy Act. At the time of Rule 301's adoption, the Rules Enabling Act, 28 U.S.C. §2075, permitted the Bankruptcy Rules to supersede procedural provisions of the statute. See Lawrence P. King, The History and Development of the Bankruptcy Rules, 70 Am. Bankr. L.J. 217, 220 (Summer 1996). The supersession provision of the Rules Enabling Act was repealed in 1978 by §247 of the Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, 92 Stat. 2549.

      [6]    See Fed. R. Bankr. P. 3001(a) ("A proof of claim shall conform substantially to the appropriate Official Form"). The Debtors assert that the Proof of Claim is nonconforming because inter alia:

- PRA did not attach to Proof of Claim documents upon which the underlying indebtedness is based, see Fed. R. Bankr. P. 3001(c); and

- PRA did not attach to Proof of Claim the documentation establishing PRA's ownership of the claim in its asserted capacity as assignee, see id.

support the claim, the claim should be disallowed based on nothing but the objection alone.

### C. Fed. R. Bankr. P. 3001

#### 1.

I begin by considering whether the Proof of Claim is entitled to prima facie evidentiary effect under Rule 3001(f). This requires a determination whether the Proof of Claim was "executed and filed in accordance with" the rules of court. See Fed. R. Bankr. P. 3001(f). The relevant rules of court include Rule 3001(a)-(e).

Rule 3001(a) requires that the proof of claim "conform substantially to the appropriate Official Form," which is Official Form No. 10. Rule 3001(b) requires that the proof of claim be executed by the creditor or the creditor's authorized agent. Rule 3001(c) provides that if a claim is "based on a writing," a copy of the writing be attached to the proof of claim unless it has been lost or destroyed, in which case a statement of the "circumstances of the loss or destruction" must be filed with the claim. Rule 3001(d) provides that if the claimant asserts that it holds a security interest in property of the debtor, the proof of claim "shall be accompanied by evidence that the security interest has been perfected." Rule 3001(e) addresses certain obligations of holders of claims that were transferred to the holder.[7]

---

[7] Like Rule 3001(f), these other subsections of Rule 3001 can be traced back to the former Bankruptcy Act and the Bankruptcy Rules promulgated under the Act. See Bankruptcy Act §57a, 11 U.S.C. §93(a) (repealed) (requiring that a proof of claim be signed by a creditor); Bankruptcy Rule 301(a) (superseding §57a of the former Act and authorizing execution of proof of claim by the creditor or agent); Bankruptcy Act §57b, 11 U.S.C. §93(a) (repealed) (requiring that writings be attached to proofs of claim "founded" on a writing); Bankruptcy Rule 302(c) (superseding §57b of the former Act and requiring that writings be attached to proofs of claim "founded" on a writing and also requiring that secured claims be accompanied by evidence of perfection); Bankruptcy Rule 302(d) (addressing obligations of holders of claims that were transferred to the holder).

Official Form No. 10, effectively incorporated through Rule 3001(a), appears to relax the requirements of Rule 3001(c). Paragraph 7 initially instructs the claimant to attach copies of documents "that support the claim, such as promissory notes, purchase order invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements." It further states, without qualification, "You may also attach a summary." (emphasis added).[8] See generally 6 Bankr. Service L. Ed. §53:33 (West 2010) ("Bankruptcy Service") (collecting cases involving satisfaction of Rule 3001(c) through attachment of a summary for credit card claims).

### 2.

There are many reported decisions involving objections to proofs of claim based on credit card agreements held by assignees of the original creditor. In such cases, two separate issues arise frequently:

(1) what documentation is necessary with respect to the debtor's contract with the original creditor and the amount of the debt arising therefrom; and

(2) what documentation, if any, is necessary with respect to the assignment of the claim by the original assignee to the claimant.

With respect to the first issue, courts agree that a credit card agreement is based upon a writing and therefore, to comply with Rule 3001(c), the claimant also must file the "writing" on which the claim is "based." E.g., In re Curry, 425 B.R. 841, 846 (Bankr. D. Kan. 2010); In re Armstrong, 320 B.R. 97, 104 (Bankr. N.D. Tex. 2005) (joint opinion of Felsenthal, Houser and Hale, JJ.). One court observed that the language of Rule 3001(c) "could not be more clear –

---

[8] This version of Official Form No. 10 has been in effect since December 2007. Previously, the official form permitted the claimant to attach a summary of the documents only if the documents were "voluminous." The requirement that the documents be voluminous as a precondition for attaching a summary in lieu of a copy of the document was deleted effective December 2007. There is no Committee Note from the Advisory Committee on Bankruptcy Rules explaining the change.

creditors must attach documents (or copies thereof) to their proof of claim or explain why they have not." In re Gilbreath, 395 B.R. 356, 362 (Bankr. S.D. Tex. 2008).

It is less clear, however, precisely what documents must be filed with the proof of claim to satisfy Rule 3001(c)'s requirement that the "writing" on which the claim is "based" be filed. "The case law is split with regard to whether the writing, on which a [credit card] claim is based . . . is the credit card agreement, the transactional record of each charge, or both the credit card agreement and a record of each transaction that is related to the claim." In re Irons, 343 B.R. 32, 40 (Bankr. N.D.N.Y. 2006).

The second common area of contention regarding proofs of claim based on credit card debt arises because these claims often are filed by assignees of the original creditor. As a result, courts have considered whether, in addition to documenting the basis for the underlying indebtedness, Rule 3001(c) also requires the claimant to document the assignment itself and, if so, what documents satisfy this additional requirement.[9] Bankruptcy courts are "split on the documentation required of an assignee to establish a prima facie case" under Rule 3001(f). In re Minbatiwalla, 424 B.R. 104, 113 (Bankr. S.D.N.Y. 2010).

To determine whether the Proof of Claim in this case is entitled to prima facie evidentiary status, I need not wade deeply into this jurisprudential thicket. Assuming arguendo that the attachment to the Proof of Claim constituted a summary sufficient to satisfy the first requirement described above (relating to the attachment of the writings on which the underlying indebtedness is based), I conclude that it failed to satisfy the second requirement (relating to the writings that

---

[9] An unstated premise is that assignments of credit card receivables are in writing and not oral. The premise appears reasonable. It is inconceivable that the massive number of assignments of credit card claims that are reflected on the dockets of bankruptcy courts are not based on writings.

document the assignment of the account to the claimant). On this question, I agree with and will follow In re Kincaid, 388 B.R. 610 (Bankr. E.D. Pa. 2008).

In Kincaid, Judge Sigmund reasoned:

> [Under Rule 3001(c),] there must be some documentation that evidences that [an assignee-claimant] has the right to assert a claim for the credit card debt for the presumption to apply.
>
> . . .
>
> Claimants respond by arguing that Bankruptcy Rule 3001(e)[10] simply obviates this showing. Their rationale is that since assignment documents are expressly required when an assignment occurs after the filing of the proof of claim and are not required as here when the transfer occurs before the claim is filed, it follows that no evidence of the assignment need be attached to the proof of claim. The Claimants cite cases that have so held. . . . I agree that the some courts have found this argument persuasive. I respectively disagree, aligning myself with those courts that view Rule 3001(e)(3) as merely establishing who is entitled to file a proof of claim and not what evidence is necessary to prove its ownership. <u>It is counterintuitive to conclude that an assignee has less of a burden to establish its claim than a direct creditor.</u> Rule 3001(e)(3) has a purpose separate and apart from the establishment of a claim. It is intended to make clear that disputed prepetition claim transfers are not an issue for the court's concern. That is not the point of requiring evidence of ownership for

---

[10] Rule 3001(e)(1), (2) provides:

> **(1) Transfer of Claim Other Than For Security Before Proof Filed.** If a claim has been transferred other than for security before proof of the claim has been filed, the proof of claim may be filed only by the transferee or an indenture trustee.
>
> **(2) Transfer of Claim Other Than For Security After Proof Filed.** If a claim other than one based on a publicly traded note, bond, or debenture has been transferred other than for security after the proof of claim has been filed, evidence of the transfer shall be filed by the transferee. The clerk shall immediately notify the alleged transferor by mail of the filing of the evidence of transfer and that objection thereto, if any, must be filed within 21 days of the mailing of the notice or within any additional time allowed by the court. If the alleged transferor files a timely objection and the court finds, after notice and a hearing, that the claim has been transferred other than for security, it shall enter an order substituting the transferee for the transferor. If a timely objection is not filed by the alleged transferor, the transferee shall be substituted for the transferor.

> claims allowance. By demanding the identification of the owner of a claim to ensure that Debtor has an obligation to pay that creditor and, in exchange, will receive a discharge of its debt, Debtor is not seeking to challenge the transfer but merely to confirm that one has taken place.

Kincaid, 388 B.R. at 616-17 (emphasis added) (citations and footnotes omitted); accord In re Samson, 392 B.R. 724, 732 (Bankr. N.D. Ohio 2008) (assignee "must still match the evidentiary requirements of Bankruptcy Rule 3001 which [the assignor] would have faced").

In short, I hold that, for purposes of Rule 3001(c), a proof of claim filed by an assignee is "based," in part, on the assignment. Therefore, to satisfy Rule 3001(c) and obtain prima facie evidentiary status under Rule 3001(f), an assignee filing a proof of claim must attach the written assignment or set forth a summary of the document.

Here, the Proof of Claim lacks any documentation regarding the assignment of the claim to PRA. Therefore, to satisfy Rule 3001(c), it must provide an adequate summary of the assignment. I find that it does not.

The information on the face of the Proof of Claim and the attachment is elliptical. The face of the Proof of Claim states conclusorily that PRA is a successor in interest to SQUARETWOFINANCIAL (BANK OF AMERICA). The attachment states that the account "was purchased from SQUARETWOFINANCIAL on 2/25/10," but does not explain what the phrase "SQUARETWOFINANCIAL (BANK OF AMERICA)" means. Is SQUARETWOFINANCIAL a separate entity or simply a part of Bank of America? If SQUARETWOFINANCIAL is a separate entity, is it an assignee of Bank America, making PRA a subsequent assignee? If so, when did the assignment to SQUARETWOFINANCIAL take place?

Bankruptcy Rule 3001(c) is designed to provide the debtor with "fair notice of the

conduct, transaction and occurrences that form the basis of the claim," In re Sandifer, 318 B.R. 609, 611 (Bankr. M.D. Fla. 2004), thereby assisting the debtor in deciding whether the claim should be contested, see In re McCarthy, 2004 WL 5683383, at *5 (Bankr. E.D. Va. July 14, 2004). A proof of claim that attempts to satisfy Rule 3001(c) by providing a summary rather than attaching the assignment documents must describe the chain of title leading to the assignee in detail and in a clear and coherent manner. The Proof of Claim here fails to meet that standard.[11] Due to the inadequacy of the information set forth in the Proof of Claim, I find that this is the type of situation in which "absent adequate documentation, the proof of claim is not sufficient for the objector to concede the validity of a claim." Minbatiwalla, 424 B.R. at 119

For these reasons, the Proof of Claim does not comply with Rule 3001(c). It follows that Rule 3001(f) does not accord the Proof of Claim prima facie evidentiary status.

### D. Effect of Failure to Comply With Rule 3001

**1.**

The determination that the Proof of Claim lacks prima facie status under Rule 3001(f) leads to another question. If a proof of claim lacks prima facie evidentiary effect through Rule 3001(f), should the claim be disallowed upon objection if the claimant does not come forward with additional evidence in support of the claim? Stated differently, can a proof of claim which

---

[11] Had the Proof of Claim provided a sufficiently detailed and clear summary of the assignment, the Debtors still could have challenged the claim and the veracity of the assignment information set forth in the Proof of Claim. But, the burden of production would have shifted to the Debtors to introduce some evidence rebutting the information in the claim. Presumably, to meet this burden, the Debtors would have had to conduct some discovery prior to the hearing, such as requesting production of the assignment documents. In such a case, the claimant's failure to produce the documents on request may satisfy the objector's burden of production. See In re Porter, 374 B.R. 471 (Bankr. D. Conn. 2007); accord In re Sacko, 394 B.R. 90, 104 (Bankr. E.D. Pa. 2008).

does not comply with the Rules otherwise achieve prima facie evidentiary status?

This issue has divided bankruptcy courts for more than 100 years. See 3 Collier 14th §57.09, at 185.[12]

A majority of the courts that have considered the issue have held that the failure to comply with Rule 3001 is not, by itself, grounds for disallowance of a claim. See In re Hartman, 2009 WL 4043096, at *3 (Bankr. D.N.J. Nov. 20, 2009) (describing this holding as "the majority position"); In re King, 2009 WL 960766, at *5 (Bankr. E.D. Va. Apr. 8, 2009) (same); see also In re Kirkland, 379 B.R. 341, 344 (B.A.P. 10th Cir. 2007), (collecting cases), rev'd on appeal, 572 F.3d 838 (10th Cir. 2009).[13]

Several rationales have been offered to support the majority position.

First, some courts reason that the outcome is dictated by the plain language of 11 U.S.C. §502(b), which does not include the failure to comply with the rules of court as a ground for

---

[12] Collier states that the there was "some divergence of opinion" on the issue, with some courts treating §57b of the former Act as mandatory and others treating it discretionary. Interestingly, Collier cites four cases holding that document attachment requirement is mandatory (and those cases cite other cases for the same proposition) and only one case holding that the document attachment requirement is discretionary. Id. at nn.2-3. My research also suggests that the weight of authority seems to support the strict enforcement of §57b of the Act. Compare In re Louis Elting, Inc. 4 F.Supp. 732, 735-36 (D.C.N.Y. 1933) (collecting cases); Matter of Keller, 252 F. 942 (E.D. Mich. 1918); In re Goldstein 199 Fed. 665 (D. Mass. 1912); In re Greenfield, 193 Fed. 98 (E.D. Pa. 1912); In re Goble Boat Co., 190 Fed. 92 (N.D.N.Y. 1911) with Matter of Petrich, 43 F.2d 435 (S.D. Cal. 1930). In describing the courts as divided on the issue, perhaps the authors of the 14th edition of Collier drew upon their collective personal experience and concluded that the seemingly one-sided number of reported decisions did not reflect actual day-to-day practice in the bankruptcy courts with respect to this issue. See generally Stephen L. Nelson, the King's Wrongs and Federal District Courts: Understanding the Discretionary Function Exception to the Federal Tort Claims Act, 51 S. Tex. L. Rev. 259, 285 (Winter 2009) (observing that "[s]ome public law scholars discount studies involving only reported decisions as distorted and unreliable").

[13] I cite the bankruptcy appellate panel in Kirkland, even though its decision was reversed on appeal, because it collected many of the cases on the subject. Of course, the 10th Circuit Court of Appeals decision is not binding on bankruptcy courts in this circuit. Accord Hartman, 2009 WL 4043096, at *3 (considering, but declining to follow, court of appeals decision in Kirkland).

disallowance, along with the principle that the rules of court may not modify substantive rights grounded in the statute. See, e.g., Kirkland, 379 B.R. at 345.

Second, some courts express concern that the contrary rule would undermine the integrity of the bankruptcy system, permitting debtors, in particular, to invoke technical grounds to defeat claims that they would otherwise have to concede are valid. For example, in In re Simms, 2007 WL 4468682 (Bankr. N.D.W. Va. Dec. 17, 2007), the court reasoned:

> [T]he Debtor has not raised any legal or factual dispute regarding the validity or amount of [the creditor's] claim under §502(b). Should the Debtor contest the validity or amount of [the creditor's] proof of claim pursuant to §502(b), then the evidentiary effect of [the creditor's] purported failure to properly document its proof of claim will become relevant.

2007 WL 4468682, at *3. Similarly in In re Lapsansky, 2006 WL 3859243, at *2 (Bankr. E.D. Pa. Oct. 31, 2006), Judge Fehling of this court overruled claims objections "because the Objections do not attack Debtor's liability for the claims or the amount of the underlying debts, but instead are based solely on the argument that the claims should be disallowed because they do not attach the documentation required by Rule 3001(c)." Underlying this line of cases is a legitimate concern that a contrary outcome might permit debtors to employ the Rule as a tool "to object to claims they admittedly owe based on perceived evidentiary advantages." Kincaid, 388 B.R. at 618.

A third rationale for the majority position may be derived from the historic principle in proof of claim jurisprudence that a proof of claim should be treated as if it were a verified complaint or a deposition. This has been the practice under both the Act[14] and the Code.[15]

---

[14] See Whitney v. Dresser, 205 U.S. at 535 ("Some force also may be allowed to the word 'proof' as used in the [Bankruptcy A]ct"); In re Sabre Shipping Corp., 299 F. Supp. 97, 99 (S.D.N.Y. 1969) (proof of claim is "like a deposition of the claimant . . . entitled to some weight as a sworn statement with respect to the matters asserted therein"); In re United Wireless Telegraph Co., 201 F. 445, 446-47 (D. Maine 1912) ("Bankruptcy proceedings are somewhat summary in their character, and the

When a proof of claim is conceptualized as evidence (rather than a pleading), it becomes apparent that the proof of claim may include sufficient detail regarding the claim for a court to accord it prima facie status and require the objector to come forward with some evidence to contest the claim, even though the proof of claim does not comply with all of the requirements of Rule 3001.

Fourth, the majority view finds support in the overall purpose and functioning of the claims resolution process. The process is designed to achieve the fair and inexpensive resolution of claims objections through a summary procedure that mirrors, but does not slavishly conform to, the formalities of conventional civil litigation. See In re Sacko, 394 B.R. at 99 (citing In re Shank, 315 B.R. 799, 814 (Bankr. N.D. Ga. 2004)). To accomplish this purpose, courts must be practical and flexible, not rigid, in their application of the rules of court, see Fed. R. Bankr. P. 1001, and strike a balance between the interest of the claimant in setting forth its claim without

---

proof of claim is regarded as a deposition rather than as pleading. It has the force of evidence.").

The reference in Sabre Shipping to a "sworn statement" reflects that prior to 1960, §57a of the Act required that the proof of claim be made under oath. Collier 14th ¶¶57.03[20, 57.04. Currently, Official Form 10 advises, just below the signature line that: "*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.* (emphasis in original). In a case under the Code, at least one court has treated the notice on the Official Form of the penalties for presenting a fraudulent claim as the functional equivalent of a verification. See In re Cluff, 313 B.R. 323, 338 (Bankr. D. Utah 2004); aff'd, 2006 WL 2820005 (D. Utah. Sept. 29, 2006). But see In re DePugh, 409 B.R. at 98 n.9.

[15]   In re Heath, 331 B.R. 424, 435 (B.A.P. 9th Cir. 2005) (proof of claim is "similar to a verified complaint and ha[s] an independent evidentiary effect"). I acknowledge that the sentence I have quoted from in Heath begins with a reference to the purpose of Rule 3001(f). Nevertheless, by its citation of In re Cluff, 313 B.R. at 332, I believe the court meant to describe the evidentiary effect of a proof of claim, regardless whether the proof of claim satisfies Rule 3001(c) and is accorded prima facie status under Rule 3001(f). In Cluff, the court undoubtedly treated information in a proof of claim that did not comply with Rule 3001(c) as evidence that the court may consider. See 313 B.R. at 337-38; see also In re Garner, 246 B.R. 617, 622 (B.A.P. 9th Cir. 2000) (proof of claim has evidentiary effect similar to that of a verified complaint).

undue burden or expense and the interest in the debtor or trustee in obtaining sufficient information to permit evaluation the claim's validity without under burden or expense. As Judge Sigmund observed in Kincaid,

> Creditors [should not be] given leave to file proofs of claim with little or no documentation nor [should] debtors [be] encouraged to object to claims they admittedly owe based on perceived evidentiary advantages. Objections under Rule 3001 [should] serve a legitimate purpose and [should not be] used to frustrate creditors or waste time while creditors [should] be mindful of the process if they wish to participate in a distribution from the estate.").

388 B.R. at 618.

However, a minority of courts have taken the intuitive position that court rules adopted to facilitate administration of the claims allowance process should be enforced. Enforcement of a court rule usually requires that there be an adverse consequence to a litigant who fails to comply with the rule. These courts employ the logical converse of Rule 3001(f): if a proof of claim does not comply with the rules, it lacks prima facie evidentiary effect. There is ample case law supporting that proposition under the former Act. See n.12, supra.[16] Some courts under the Code have reached the same conclusion. See, e.g., In re Tran, 369 B.R. 312, 316 (S.D. Tex. 2007)); DePugh, 409 B.R. at 97-98 & n.9 (Bankr. S.D.Tex. 2009); In re Henry, 311 B.R. 813, 817-18 (Bankr. W.D. Wash. 2004).

**2.**

---

[16] If Collier 14th's characterization of the practice under the former Act, see n.12, supra, is rejected and if the consensus position of the courts prior to 1978 was that claims lacking the documentation required by §57a of the former Act should be disallowed, a respectable argument exists that courts should continue to follow that practice, absent some clear indication that Congress intended to alter past practice when it enacted the Code. See Cohen v. de la Cruz, 523 U.S. 213, 221 (1998); Dewsnup v. Timm, 502 U.S. 410, 410 (1992).

Having reviewed the competing lines of authority, I find the majority approach to be the better view and that compliance with Rule 3001(f) is not the sole vehicle for a proof of claim to achieve prima facie status. It is therefore possible for a proof of claim that does not satisfy Rule 3001(f) to nonetheless impose on the objector the burden of producing some evidence to rebut the claim.[17]

Accepting the majority's position, the issue may be distilled down to a single inquiry: Does the proof of claim provide sufficient indicia of the claim's validity and amount (despite its nonconformance with Rule 3001) to justify imposing the burden (and expense) of responding with contrary evidence?[18] If not, the debtor's objection, standing alone, may support disallowance. See Minbatiwalla, 424 B.R. at 119.[19]

In determining whether a non-conforming proof of claim has shifted the burden of

---

[17] Previously, in Sacko, I cited Kincaid with approval for the proposition that the failure to obtain prima facie evidentiary status under Rule 3001(f) is not a per se basis for disallowing a proof of claim under §502(b). 390 B.R. at 98 (citing Kincaid, 388 B.R. at 614). However, in Sacko, I held that a claim for prepetition mortgage arrears complied with Rule 3001(c) through the attachment of the parties' note and mortgage to the proof of claim. Therefore, Sacko involved a claim that had a prima facie evidentiary effect through Rule 3001(f) and did not present the question whether a proof of claim that did not comply with Rule 3001(c) should be disallowed on that basis. This case, however, squarely presents the latter issue.

[18] See Whitney v. Dresser, 200 U.S. at 535-36 ("Bankruptcy proceedings are more summary than ordinary suits. . . . Justice is secured by the power to continue the consideration of a claim whenever it appears there is good reason for it."); In re Habiballa, 337 B.R. 911, 915-16 (Bankr. E.D. Wis. 2006) (proof of claim contained sufficient detail to obtain prima facie status even though no credit card agreement or monthly statement was attached).

[19] In Minbatiwalla, the court stated that "in certain circumstances claims can be disallowed for failure to support the claim with sufficient evidence, even if this is not a specifically enumerated reason for disallowance under 11 U.S.C. § 502(b), because absent adequate documentation, the proof of claim is not sufficient for the objector to concede the validity of a claim." 424 B.R. at 119. I consider this passage in Minbatiwalla to be a restatement of the principle set forth in the text above – only, from the debtor's perspective instead of the court's perspective.

production to the objecting party, courts following the majority approach usually consider other information available in the bankruptcy record. The most common source consulted is the debtor's schedules, which may contain admissions that shore up shortfalls in the proof of claim. See, e.g., In re Campbell, 336 B.R. 430, 436 (B.A.P. 9th Cir. 2005); Minbatiwalla, 424 B.R. at 116; In re Stauder, 396 B.R. 609, 612 (Bankr. M.D. Pa. 2008) In re Samson, 392 B.R. at 733; Kincaid, 388 B.R. at 617-18; In re Herron, 381 B.R. 184, 189 (Bankr. D. Md. 2008).

I consider it appropriate for the court to review information in the bankruptcy record that is subject to judicial notice when deciding whether the burden of production has shifted to a debtor who is objecting to a proof of claim.[20] In light of the substantial variation in the content of

---

[20] As a general principle, bankruptcy courts may take judicial notice of the dockets of bankruptcy cases filed in this district and the content of the documents filed in such cases for the purpose of ascertaining the timing and status of events in the case and facts not reasonably in dispute. See Fed. R. Evid. 201; In re Scholl, 1998 WL 546607, at *1 n.1 (Bankr. E.D. Pa. Aug. 26, 1998).

I consider the court's sua sponte review of the debtor's schedules to be a salutary practice. Review of the schedules permits the court to identify and reject claims objections that might not be based on a bona fide dispute regarding the validity or amount of the claim. The need to protect the integrity of the bankruptcy system, as well as the efficient and inexpensive operation of the claims allowance process, warrant such a proactive judicial approach.

Further, I do not consider this approach to place an undue burden on objecting debtors. There are a number of ways a debtor can rebut the information in a proof of claim in a manner that is consistent with the overriding goal of "facilitat[ing] the efficient, economical resolution of claims allowance disputes. Sacko, 394 B.R. at 94. A debtor's counsel can appear without the debtor and offer a sworn statement from the debtor into evidence (that may be received, despite its hearsay character, because the creditor is not present to object). Or, the debtor's counsel can serve discovery requests on the claimant and, upon receiving no response, offer into evidence the requested discovery and the fact that the claimant failed to respond. See n. 11, supra. Or, the debtor can appear at the hearing and either be available to testify while their counsel make an offer of proof to the court or actually testify. If the stakes are sufficient to justify the filing of a claims objection, all of these are reasonable options.

I recognize that there is some tension between the adversary nature of a contested matter and a judicial practice of regularly consulting and taking judicial notice of the debtor's schedules. However, because many credit card proofs of claim are for relatively modest sums that do not justify the expenditure of significant resources by the claimant or are filed by claimants who are located far from the courthouse, many claims objection hearings are uncontested. Review of the schedules assists the court in maintaining a proper balance of power in the claims allowance process.

proofs of claim and debtors' schedules that are filed in a bankruptcy case, no hard and fast rules can be set out describing when information in the record may fill in the gaps for proofs of claim that might otherwise lack prima facie evidentiary status under Rule 3001(f). These determinations can be made only on a case-by-case basis.[21]

With these principles in mind, I consider the Proof of Claim at issue here.

### E. PRA's Proof of Claim Will Be Disallowed

As in Part III.C., I will focus on PRA's asserted status as an assignee and assume arguendo that the Proof of Claim otherwise satisfies Rule 3001(c) with respect to the validity and the amount of the underlying credit card account claim.[22] Having determined that the Proof of Claim does not satisfy Rule 3001(c) with respect to PRA's asserted status as an assignee, the question is whether anything in the record provides sufficient support for PRA's asserted assignee status to shift the burden of production to the Debtors.

There is some information in the Debtors' schedules that correlates to the Proof of Claim. Schedule F sets forth a debt that references Bank of America (the original creditor identified in the Proof of Claim) for almost the exact amount stated in the Proof of Claim.

Some courts have accepted a claimant's asserted assignee status where the debtor has

---

[21] As one court observed in discussing the effect that a review of the debtor's schedules has in determining whether the debtor has the burden of producing evidence in support of a claims objection, a proof of claim may parallel the debtor's schedules, it may bear no correlation to the schedules (or the debt may not even be scheduled) or it could fall somewhere in between. See Samson, 392 B.R. at 733.

[22] I note that while the Proof of Claim did not attach the writings on which the underlying indebtedness is based, it did provide some specific information regarding the identity of the original account creditor, the nature and amount of the asserted debt as well as the time frame in which the debt was incurred. Further, the Debtors' schedules corroborate the Proof of Claim in two striking ways: the amount of the debt and the identity to the original creditor.

scheduled a debt that corresponds to the proof of claim. See In re Leverett, 378 B.R. 793, 801 (Bankr. E.D. Tex. 2007); see also Kincaid, 388 B.R. 617-18. However, I believe the better view was expressed by the court in King, 2009 WL 960766, at *5 (emphasis in original): "it is not sufficient that the debtor owes someone money; the issue is whether the debtor (and hence the bankruptcy estate) owes it to the party filing the proof of claim." Accord In re Melillo, 392 B.R. 1, 6 (B.A.P. 1st Cir. 2008) (information in the debtor's bankruptcy schedules that tended to establish the existence of the underlying debt "provide[d] an inadequate showing of the Appellant's ownership as a transferee").

In summary, PRA has not sustained its burden of proof on an essential element of its claim in this contested matter. The Proof of Claim facially did not comply with Rule 3001(c), there also is nothing further in the record to support PRA's asserted status as an assignee of the claim at issue and PRA did not appear at the hearing on the Objection to offer evidence supporting its claim.

### IV.

For the reasons set forth above, the Debtors' Objection to PRA's Proof of Claim will be sustained. Claim Number 3 in the amount of $13,024.46 will be disallowed.

Date: September 30, 2010

ERIC L. FRANK
U.S. BANKRUPTCY JUDGE